## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Cecil Guy Truman,                    )
      Petitioner,                  )
                            )
v.                                   )          1:20cv602 (LMB/IDD)
                            )
P. A. White,                         )
      Respondent.                  )

### MEMORANDUM OPINION

Cecil Guy Truman ("Petitioner" or "Truman"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his September 19, 2016 convictions in the Circuit Court of Prince William County for five counts of distribution of heroin, two counts of felony child neglect, and one count each of possession of heroin with intent to distribute, possession of a firearm while in possession of a controlled substance, and possession of cocaine.   The respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits.   The petitioner was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss and has responded.   Accordingly, this matter is now ripe for disposition.   For the reasons that follow, respondent's Motion to Dismiss will be granted and the petition dismissed with prejudice.

### I.  Background

After a four-day jury trial ending on September 24, 2015, Truman was found guilty of five counts of distribution of heroin, and one count each of possession of heroin with intent to distribute, possession of a firearm while in possession of a controlled substance, possession of cocaine and two counts of felony child neglect.   (Case Nos. CR15001416 through CR15001424 and CR15001426).   On September 19, 2015, Truman was sentenced to a total of forty years and

six months in prison, which on January 26, 2017 was reduced to a total sentence of thirty-one years in prison after the circuit court granted Truman's motion for reconsideration.   The order modifying his sentences was entered on February 8, 2017.

    *A.   Summary of Trial Evidence*

    At trial, several witnesses testified about Truman selling heroin to them.   For example, Jenna Jensen ("Jensen") testified that he sold her heroin on a daily basis between April 15, 2014 and April 30, 2014; between May 1 and May 15, 2014; and a few times between May 16, 2014 and June 2, 2014.   (9/22/15 Tr. at 70-72, 175, 180).   Her testimony was corroborated by the police observing Truman sell her heroin on June 3, 2014.   (Id. at 186-87).   Jensen also identified text messages between her and Truman as agreements by Truman to sell her heroin. (Id. 192-94).

    David Zupan ("Zupan") testified that he bought heroin from Truman about seventeen times between April 15, 2014 and April 30, 2014 (id. at 232-33); between May 1 and May 15, 2014, and between May 16, 2014 and June 2, 2014.   (Id. at 234-36).   Zupan also testified that he had seen Truman carrying a gun "numerous times" inside Truman's residence (id. at 226) and that Truman had a pistol with him on June 3, 2014 when Truman rode his motorcycle to the Value Place Hotel to meet with Aimee Brown and Zupan.   (Id. at 190-91, 226, 243).   Aimee Brown ("Brown") paid the money to a police informant (Greg Powers) and then went to another location to pick up the drugs from Truman.   (Id. at 282-82; 9/23/15 at 66-69).

    Kimberly Royston ("Royston"), who had lived with Truman and his family, testified that she purchased heroin from Truman and his wife (9/22/15 Tr. at 93-95), and that while living with Truman, Royston observed a firearm that Truman said belonged to his wife.   (Id. at 90).

Royster testified that Truman's wife had the pistol for security and that she never saw Truman with the pistol.   (Id. at 90-91).

A search of Truman's home after his arrest disclosed a loaded operational firearm in the master bedroom (9/21/15 Tr. at 185, 188; 9/22/15 Tr. at 60), a bag of ammunition (9/21/15 Tr. at 223), 139 hypodermic needles (id. at 201-03) and other drug paraphernalia.   (Id. at 197, 199-201).   The laboratory analysis showed heroin, heroin residue and cocaine on several of the items found in Truman's home.   (Id. at 227-28).   The police recovered a box of ammunition from Truman's motorcycle on June 9, 2014 when it was searched after his arrest.   (9/22/15 Tr. at 51-53; 9/22/15 Tr. at 15).

Truman testified at trial that the gun seized by the police and introduced at trial was his wife's and that she had purchased the pistol from a Jeff Robson.   (9/23/15 Tr. at 193).   Truman testified that he had never possessed the pistol and denied ever selling heroin to either Royston, Zupan, Brown, or Jensen (id. at 190, 192, 193-94, 205, 207, 217), but did admit buying heroin from Zupan and using heroin with his wife.   (Id. at 190, 207-08).   Truman described Zupan as the dealer, and said that Zupan had come to Truman's residence on numerous occasions to sell heroin to Truman.

B. *Appellate Proceedings*

With the assistance of counsel, Truman appealed his convictions to the Court of Appeals of Virginia ("Court of Appeals") which considered his appeal in which he raised two issues:

1. The trial court erroneously found good cause to grant the Commonwealth's motion to *nolle prosequi* Mr. Truman's charges where the motion deprived Mr. Truman of his due process rights.
2. The trial court erroneously denied a new trial where the Commonwealth did not correct a prosecution witness's false testimony.

3

[Dkt. No. 10-1 at 2].   The Court of Appeals summarized the relevant trial record as follows:

Appellant was scheduled to stand trial on January 27, 2015, for distribution of a controlled substance, possession with intent to distribute a controlled substance, conspiracy to dispense drugs, simultaneous possession of a firearm and a controlled substance, two counts of child neglect, possession of a firearm by a convicted felon, and possession of a firearm by a violent convicted felon. Appellant's counsel, Myron Teluk, moved to withdraw on January 23 because of a conflict of interest.   The trial court granted the motion, appointed Scott Swajger as substitute counsel, and continued the trial to February 13.   On that date, Swajger indicated to the trial court that he was not ready for trial and requested a June trial date.   Appellant objected to a June date, and the trial court continued the case until February 20 for appellant to discuss the matter with his counsel.   Swajger moved to withdraw during this next appearance, so the trial court appointed Brian Roman as appellant's counsel and continued the trial to May 4-6.   On April 15, Roman moved to withdraw and the trial court appointed Mark Crossland as appellant's counsel.

At a hearing on May 1, Crossland asked the trial court to continue the case because he had been appointed only two weeks before the multi-day jury trial date and, in light of ongoing discovery issues, could not feasibly be prepared in time for the trial despite the approaching speedy trial deadline pursuant to Code § 19.2-243.   The Commonwealth joined the motion in order to "protect the process" in light of appellant's conflicting speedy trial and effective assistance rights. Appellant indicated that he opposed the motion, which the trial court ultimately denied.   After that, the Commonwealth moved to continue the possession of a firearm by a violent convicted felon charge, which had a longer period before the speedy trial time limit expired, until June 3.   The trial court granted this motion.

The Commonwealth then moved to nolle prosequi the remaining charges. Appellant opposed this motion, contending that no good cause existed.   The Commonwealth cited its concerns that, were the charges to go forward as scheduled, the issue regarding adequate representation for appellant would "endanger[] our convictions, if there are any obtained ...." The trial court found that good cause supported the motion and granted it.

A grand jury entered fresh indictments against appellant on June 1, 2015, and he stood trial on September 21-24, 2015.   During its case-in-chief, the Commonwealth called Kimberly Royston, who had been charged in connection with the investigation of appellant.   On cross-examination, counsel for appellant asked whether her attorney told her that she would receive a bond if she cooperated with the government, to which she replied, "No."   She indicated that she did not know why her case had been continued until after appellant's trial. She also denied that any Commonwealth representative told her that she would receive a better deal if she testified during appellant's trial.

4

Following his convictions, appellant moved for a new trial based on newly discovered evidence: a letter from Royston suggesting that the Commonwealth had offered her a plea deal in exchange for testifying in appellant's trial.   The trial court conducted a hearing on this motion on August 4, 2016, at which Royston testified.   She stated that she did not believe she perjured herself at the September 2015 trial.   Asked whether any Commonwealth representative made promises to her about her charges, she replied: "They said they couldn't make no promises or guarantees but they said they would see what they could do to lessen my charge." She went on to state that she did not mention bond in her letter and "was never aware if they did anything for [her] bond."   Referring to the standard necessary for granting a new trial based on after-discovered evidence, the trial court ruled:

> "[A]t this point, we're really on one witness and should that have been a material enough change that couldn't have been found in advance of trial that should have or would have produced an opposite result of this trial.   And I simply can't find that it is. So[,] I'm denying your motion.

[Dkt. No. 10-1 at 2-4]; Truman v. Commonwealth, 2018 Va. App. LEXIS 81, *2-5 (Ct. App. Va.

Mar. 27, 2018).

The Court of Appeals dismissed Truman's first issue because he had not properly raised

the matter at his trial.

> In this case, appellant did not challenge the Commonwealth's reinstitution of charges against him based on its lack of good cause to support the *nolle prosequi* of the initial charges.   See Harris v. Commonwealth, 258 Va. 576, 580, 520 S.E.2d 825, 827 (1999) (reviewing trial court's denial of a motion to dismiss a reindictment based on the Commonwealth's lack of good cause to *nolle prosequi* the original indictment, "effectively continu[ing] the first prosecution in the form of the second"). Instead,   appellant challenged the trial court's good cause finding with respect to the initial indictments, which became a legal nullity once the trial court entered the *nolle prosequi*.   He therefore does not appeal a decision of the trial court leading to his current convictions.   Accordingly, this Court dismisses appellant's first assignment of error for lack of subject matter jurisdiction.

[Dkt. No. 10-1 at 6]; Truman, 2018 Va. App. LEXIS 81, *8.

The Court of Appeals denied Truman's second issue because he had not complied with

Rule 5A:18.

5

> In his motion for a new trial, appellant contended that newly discovered evidence — the letter from Royston — would "reveal that the testimony of certain Commonwealth's witnesses was coerced, false and ... if given in a new proceeding, would be substantially different than when it was offered at the previous trial which would affect the likelihood of the Commonwealth proving its case against [appellant] on the merits ...." At the subsequent hearing, appellant continued to argue in this vein. At no point, however, did appellant contend that the trial court should order a new trial because of the Commonwealth's failure to correct the witness' allegedly false testimony.

[Dkt. No. 10-1 at 7]; Truman, 2018 Va. App. LEXIS 81, *9-10.

Truman filed a petition for appeal in the Supreme Court of Virginia asserting the Court of Appeals had erred in not reviewing the merits of both assertions of error he had raised. [Dkt. No. 10-2 at 7]. The Supreme Court of Virginia summarily refused his petition for appeal on November 27, 2018. [Dkt. No. 10-4]. Truman's petition for rehearing was denied on February 1, 2019. Truman v. Commonwealth, Record No. 180538.

C. Post-Conviction Proceedings

On June 19, 2019, Truman filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, that included 66 numbered paragraphs that raised allegations of trial error; denial of his right to a speedy trial; denial of his right to due process; a Miranda[1] violation; violation of his Fourth Amendment rights; state law errors; and ineffective assistance of trial and appellate counsel. The court dismissed the petition on April 17, 2020, finding the substantive claims alleging violations of Truman's constitutional rights were barred under the rule of Slayton v. Parrigan, 215 Va. 27, 29 (1974), and that Truman had failed to state a claim of ineffective assistance of counsel under the two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984). [Dkt. No. 10-7].

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

On May 12, 2020, Truman timely filed the present petition for a writ of habeas corpus

challenging his convictions and raises the following claims:

1.   His due process rights were violated by his indictment on charges not
     supported by probable cause;

2.   The trial court improperly denied his motion to overturn the jury verdict thereby
     violating his due process rights;

3.   His Miranda rights were violated;

4.   His Fourth Amendment rights were violated in a search of his home;

5 & 7.   His speedy trial rights were violated;

6.   The trial court improperly granted a *nolle prosequi* requested by the
     prosecution thereby violating  the petitioner's Due Process Rights;

8.   The trial court improperly denied the petitioner access to the Commonwealth's
     evidence;

9.   The trial court improperly refused to hear a motion in  limine;

10.  In January 2015, petitioner's former counsel did not properly advise him
     about the effect of his consenting to a  continuance;

11.  His sentence constituted cruel and unusual punishment;

12.  His right  to  the  effective  assistance  of  counsel  on  appeal was denied;

13.  His rights  under  the  Universal  Declaration  of  Human Rights were violated;

14.  His trial attorney was ineffective for:

     A.  Filing bogus and unnecessary motions to assist the
         prosecutor in subverting his speedy trial rights;

     B.  Refusing to subpoena witnesses;

     C.  Refusing to assist the petitioner in forming a defense;

     D.  Failing to assist the petitioner in obtaining civilian clothing
         for trial;

     E.  Coercing the petitioner into consenting to a joinder of these
         charges;

     F.  Failing to challenge the Commonwealth's witnesses;

     G.  Sabotaging his appeal and not raising issues he wanted the
         attorneys to raise.

## II.   Exhaustion and Procedural Bar

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court.   See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."   O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia.   See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."   Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)).   Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim."   Id. (quoting Gray, 518 U.S. at 162).

Finally, exhaustion requires that not only must a claim be exhausted but the facts upon which a petitioner relies must have been exhausted as well.   A petitioner must, therefore, have presented "'both *the operative facts* and the controlling legal principles'" to the state court for review.   Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (emphasis added) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997)).   The requirement that facts be exhausted is an important aspect of exhaustion under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

8

132, 110 Stat. 1214.   The AEDPA limits federal habeas "review under § 2254(d)(1) …

to the record that was before the state court that adjudicated the claim on the merits."

Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Muhammad v. Clarke, 2012 U.S.

Dist. LEXIS 10129, *24 (E.D. Va. Ja. 26, 2012) (where a petitioner attempts to allege

unexhausted facts, the federal court must defer to the state court's finding ) (citing Kasi,

300 F.3d at 501-02; Pinholster, 563 U.S. at 182-83), appeal dismissed, 474 Fed. Appx.

979 (4th Cir. 2012).[2]   Pinholster emphasized "that the record under review is limited to

the record in existence at that same time — *i.e., the record before the state court*."   Id.

(emphasis added).   In the Fourth Circuit, the reasonableness of a state court decision is

evaluated "'in light of the evidence presented in the State court proceeding.'"   Porter v.

Zook, 898 F.3d 408, 443 (4th Cir. 2018) (quoting Jones v. Clarke, 783 F.3d 987, 991 (4th

Cir. 2015)).

    A.  *Claims Exhausted on Direct Appeal and in State Habeas.*

    Truman raised federal habeas Claims 2 (denial of post-trial motion) and 6 (denial of

motion challenging the *nolle prosequi* of the first set of indictments) on direct appeal and they

are therefore exhausted.   Truman's state habeas petition set forth 66 numbered paragraphs.   In

---

[2]   Pinholster explained that

> [w]hat makes the consideration of new evidence strange is not how "different" the
> task would be, but rather the notion that a state court can be deemed to have
> unreasonably applied federal law to evidence it did not even know existed.   We
> cannot comprehend how exactly a state court would have any control over its
> application of law to matters beyond its knowledge.

563 U.S. at 183 n.3.

addressing those claims the Supreme Court of Virginia grouped the related paragraphs and addressed them by the nature of the claim presented.   The following federal habeas claims were raised in Truman's state habeas petition:

- Claim 1, denial of due process rights because his indictments were not supported by probable cause.  [Dkt. No. 10-7 at 2; state habeas paragraphs 61-62];

- Claim 4, his Fourth Amendment rights were violated in a search of his home,  [Dkt. No. 10-7 at 1; state habeas paragraphs 20-22, 28, 29-31, 33, 48, 49];

- Claim 5, his speedy trial rights were violated.  [Dkt. No. 10-7 at 3; state habeas paragraphs 64-65];

- Claims 7-9, his speedy trial rights were violated by the trial court's improper grant of a *nolle prosequi* requested by the prosecution, which thereby violated the petitioner's Due Process Rights; and the trial court improperly denied petitioner access to the prosecution's evidence and refused to hear a motion in limine.  [Dkt. No. 10-7 at 2 and 3; state habeas paragraphs 54-55, 66];

- Claim 12, denied effective assistance of counsel on appeal.  [Dkt. No. 10-7 at 8; state habeas paragraphs 11, 42-43]; and

- Claim 14, trial counsel was ineffective for filing bogus and unnecessary motions to assist the prosecutor in subverting his speedy trial rights; for refusing to subpoena witnesses; for not obtaining civilian clothing for his trial; for not formulating a defense for petitioner; for coercing the petitioner into consenting to a joinder of these charges; for not challenging the Commonwealth's witnesses; and sabotaging his appeal and not raising issues he wanted the attorneys to raise.  [Dkt. No. 10-7 at 3-7; state habeas paragraphs 30 -31, 33, and 40; 34; 7 and 35; 36; 37; 8, 38, 52 and 53; 8, 53-55; 8 and 39; 40; 11, 42-43; and 47].

With the exception of Claims 12 and 14, the Supreme Court of Virginia found that Truman had defaulted all his other claims pursuant to the rule of Slayton v. Parrigan, 215 Va. 27, 29 (1974) because he could have raised each claim at trial or on direct appeal but had not raised them and therefore they were barred from consideration "in a habeas corpus petition."  [Dkt. No. 10-7 at 3].

### B.  Claims Exhausted and Simultaneously Defaulted

Truman did not exhaust federal habeas Claims 3 (<u>Miranda</u> violation), 10 (ineffective assistance allegation concerning attorney's failure to properly advise him regarding a continuance before the *nolle prosequi*), 11 (Eighth Amendment violation) and 13 (Universal Declaration of Human Rights claim) because he failed to raise them on direct appeal or in the habeas petition he filed in the Supreme Court of Virginia.   Although Truman never presented these four claims to the Supreme Court of Virginia, they are nonetheless treated as exhausted because he now is precluded from bringing them in state court.   Specifically, these claims would be procedurally defaulted under Virginia Code § 8.01-654(A)(2) (state habeas petition statute of limitations), and Virginia Code § 8.01-654(B)(2) (successive writ).   Therefore, the claims are simultaneously exhausted and defaulted for the purposes of federal habeas review.   See <u>Bassette v. Thompson</u>, 915 F.2d 932 (4th Cir. 1990).

### C.  Cause and Prejudice, and Miscarriage of Justice

Even if a claim has been defaulted, a federal court may review it if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice.   <u>Vinson v. True</u>, 436 F.3d 412, 417 (4th Cir. 2005).   "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him ...."   <u>Coleman v. Thompson</u>, 501 U.S. 7.

To establish cause, a petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule."   <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).   To show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions."   United States v. Frady, 456 U.S. 152, 170 (1982)

(emphasis removed).   A court need not consider the issue of prejudice in the absence of cause.

See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).   In his reply to the motion to

dismiss, Truman argues that the defaults should not be enforced because he was denied effective

assistance of counsel, witnesses lied, and he was denied a speedy trial.   [Dkt. No. 14 at 4-5].

> In some circumstances, ineffective assistance of counsel may be sufficient
> "cause" for a defaulted claim.   See Edwards [v. Carpenter, 529 U.S. 446, 451
> (2000)]; Slavek v. Hinkle, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005).
> Importantly, where a petitioner for federal habeas relief seeks review of claims
> defaulted during state habeas proceedings, he must show that he raised the
> ineffectiveness argument as a cause for the defaulted substantive claims during
> his state habeas proceedings.   If a petitioner did not raise the ineffectiveness
> claim at the state habeas level, a federal habeas court may not consider it.
> Edwards, 529 U.S. at 452-53.

Powell v. Kelly, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), aff'd, 562 F.3d 656 (4th Cir. 2009).

### 1.   Claims Defaulted under Slayton v. Parrigan

The Supreme Court of Virginia found that the issues raised in federal Claims 1, 4, 5, and

7-9, were defaulted pursuant to the rule of Slayton v. Parrigan because they were not raised at

trial or on direct appeal.   Truman alleged in federal Claim 14(G) that his appellate attorney was

ineffective for not raising claims related to the prosecution's witnesses alleged lying about plea

deals in exchange for their testimony and failing to challenge violations of Truman's Fourth,

Fifth, Sixth, Eighth, and Fourteenth Amendment rights — specifically, by challenging "the

legality of his arrest and the search of his home, whether he was tried in violation of his

constitutional right to a speedy trial, whether the circuit court properly denied petitioner's motion

to set aside the verdict, and whether his forty-year sentence is unconstitutionally cruel and

unusual."   [Dkt. No. 10-7 at 8].   The Supreme Court of Virginia dismissed the claim of

12

ineffective assistance of appellate counsel because Truman had failed to satisfy either the

diligent performance or prejudice prongs needed to establish a claim of ineffective assistance of

counsel under Strickland v. Washington, 466 U.S. 668 (1984).   [Dkt. No. 10-7 at 8].

> Generally, the selection of issues to raise on appeal is left to counsel's discretion, and petitioner has not attempted to explain how the issues he suggests counsel should have raised were appreciably stronger or more likely to succeed than the issues counsel choose to raise.   See Jones v. Barnes, 463 U.S. 745, 751-52 (1983) (the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need no address every possible issue on appeal); United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014) ("Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit ....   As a general matter, only when ignored issues are clearly stronger than those presented should we find ineffective assistance for failure to pursue claims appeal.") (internal quotation marks and citations omitted).   Likewise, petitioner has not attempted to allege or explain how counsel's raising different issues on appeal would have resulted in the reversal of any of his convictions or another successful outcome on appeal.   The petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

[Dkt. No. 10-7 at 8]; see infra at 34-35.   On this record, the Court finds that Truman has not

established cause to excuse the defaults for Claims 1, 4, 5, and 7-9.

   2.  *Claims Defaulted on Direct Appeal*

In Claim 2, Truman asserts he proved during the post-trial motion that Royston and

Jensen lied at his trial.   [Dkt. No. 1 at 20].   He also alleges in his federal petition that the

prosecutor was guilty of witness tampering and not correcting witnesses' false testimony at trial.

[Dkt. No. 1 at 20].   On appeal, Truman limited his appeal to a claim that Royston lied at trial.

[Dkt. No. 10-2 at 13, "The Commonwealth Allowed Ms. Royston to Testify Falsely"]; (Pet. App.

at 21); (Br. of App. at 21); (Reply Br. at 3-5).

13

The record shows that during the post-trial hearing, Truman did not establish that Royston lied at trial. To the contrary, the trial judge found that Royston never admitted lying about any of her testimony regarding the substance of what had happened. (8/6/16 Tr. at 35). The trial judge also found that Jensen "was a hundred percent honest about things." (Id. at 40). Moreover, Truman's trial counsel admitted that he was advised before trial about a bond deal negotiated between Royston's attorney and the prosecutor to enable that trial counsel to cross-examine her on that point (id. at 26-27), which is the primary point raised at the post-trial hearing as the basis for the charge of perjury. [Dkt. No. 1 at 21-22]. Referring to the quantum of trial evidence, the court concluded that the evidence presented at the post-trial hearing would not have produced a different trial outcome. (8/6/16 Tr. at 40-41).[3] On appeal, Truman did not raise this ruling as an assignment of error, instead, he alleged that the prosecutor had erred by not correcting what he asserted was false testimony by Royston.

With regard to the allegations Truman raises in his federal habeas petition, the Court of Appeals found that the allegation against the prosecutor had been defaulted because it had not been raised at trial. See Truman, 2018 Va. App. LEXIS 81, *10 ("At no point, however, did appellant contend that the trial court should order a new trial because of the Commonwealth's failure to correct the witness' allegedly false testimony."). Alternatively, the Court of Appeals found that even if Royston had testified falsely, there was no basis to find a miscarriage of justice because of the remainder of the evidence introduced at trial.

> Even assuming arguendo that the testimony in question was false, appellant
> nonetheless cannot prove a manifest injustice because the jury had ample other

---

[3]   The trial judge's ruling covered not only the evidence presented regarding Royston, but the alleged perjury of Jensen as well.

14

> evidence with which to convict appellant.   Other witnesses testified that they
> purchased drugs from appellant, a firearm and ammunition were found in his
> home, and appellant's own testimony supported the child neglect charges.   In
> light of the other evidence of his guilt, this Court cannot find that a miscarriage of
> justice occurred.

[Dkt. No. 10-1 at 9]; Truman, 2018 Va. App. LEXIS 81, *12-13.   In sum, the trial judge found

the evidence presented at the post-trial hearing would not have changed the outcome of

Truman's trial, and the Court of Appeals alternative holding affirmed that ruling.   Therefore,

Truman has also failed to establish any prejudice.

     In Claim 6, Truman alleges that the trial court violated his right to due process by

granting the *nolle prosequi* requested by the prosecution and violated his Sixth Amendment right

to a speedy trial by granting the continuances sought by his attorneys.   Truman raised this claim

on direct appeal, and it was dismissed for lack of jurisdiction because it had not been raised

properly at trial.   See, supra at 2, 4.   On May 1, 2015, trial counsel, Mark Crossland,

represented to the circuit court that he needed a continuance in order to be prepared for the

upcoming trial because he had been appointed only two weeks before the date set for the trial.

Crossland was Truman's fourth attorney.   Truman objected to his counsel's motion and the

circuit court denied the continuance.   In response to the decision, the prosecutor moved to

continue the felony charge for possession of a firearm by a violent convicted felon, which had a

later speedy trial date than the other indictments, and then moved to *nolle prosequi* the other

indictments out of concern that if Truman were convicted the convictions would be subject to

challenge on the basis of ineffective assistance of counsel.   The circuit court found the

prosecutor's concern satisfied the good cause requirement and granted the *nolle prosequi.*

Thereafter, Truman did not properly challenge the determination of good cause, and that resulted in the dismissal of the appellate claim.

In short, the state provided Truman with a mechanism for challenging the ruling, but he did not follow proper procedure.   Providing that mechanism defeats his due process claim.

> In our federal system, the states are allowed to structure their systems of criminal justice as they see fit, as long as their systems satisfy the basic demands of due process.   There is often no one best way of doing things.   A state practice thus "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar."

Billotti v. Legursky, 975 F.2d 113, 116 (4th Cir. 1992) (Spencer v. Texas, 385 U.S. 554, 564 (1967)).   Because the Court of Appeals found Truman could have challenged the circuit court's ruling if he had followed the proper procedure, that determination of state law precludes federal review of this claim.   See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").[4]

Moreover, granting the prosecution's request to *nolle prosequi* was warranted under the circumstances.   With regard to the continuances that preceded Crossland's appointment as Truman's counsel, the trial court had no choice but to continue the matters when prior counsel were allowed to withdraw.   See Ungar v. Sarafite, 376 U.S. 575, 589 (1964) ("The matter of continuance is traditionally within the discretion of the trial judge" and depends on the circumstances presented to the judge; and "a myopic insistence upon expeditiousness in the face

---

[4]   The record establishes that the circuit court did an admirable job of balancing Truman's right to counsel against the integrity of the judicial process.   The circuit court's efforts succeeded in ensuring Truman had an effective advocate.   See infra at 31-32.

of a justifiable request for delay can render the right to defend with counsel an empty

formality.").[5]

Under federal law, when determining whether a defendant's right to a speedy trial has

been violated, the court considers: (1) the length of delay; (2) the reason for the delay; (3)

whether the accused asserted his right to a speedy trial in the state tribunals; and (4) whether the

delay caused prejudice.   Barker v. Wingo, 407 U.S. 514, 530-31 (1972).   Truman was arrested

in June of 2014 and tried fifteen months later on September 21, 2015, a period of approximately

15 months.   In denying the speedy trial motion in September of 2015, the trial court found that

each of the continuances from January 23, 2015 were attributable to Truman.   (9/3/15 Tr. at 55).

> If the delay is attributable exclusively to the defendant, "he will be deemed to
> have waived his speedy trial rights entirely."   United States v. Manning, 56 F.3d
> 1188, 1195 (9th Cir. 1995).   Similarly, portions of the delay which are
> attributable *to the defendant or his counsel* "will not be considered for purposes of
> determining whether the defendant's right to a speedy trial has been infringed."

Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir. 2002) (citations omitted) (emphasis added).   If the

nine-month delay from January through September is subtracted from the 15 months, the delay

not attributable to Truman or his counsel is only six months, which is less than the one-year

period that is considered "presumptively prejudicial," and *does not even trigger* Sixth

Amendment analysis.   See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992); Barker, 407

U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity

for inquiry into the other factors that go into the balance."); United States v. Woolfolk, 399 F.3d

590, 597 (4th Cir. 2005) ("One year is the 'point at which courts deem the delay unreasonable

---

[5]   See, infra at 19-21 (discussion of continuances necessitated by counsel withdrawing).

enough to trigger the <u>Barker</u> [i]nquiry.'") (citing <u>Doggett</u>, 505 U.S. at 652 n.1).   If a petitioner does not establish presumptive prejudice, a court does not need to consider the remaining speedy trial factors.[6]   Given this record, Truman's speedy trial claim is meritless.

### 3. *Claims Simultaneously Exhausted and Defaulted*

Claims 3 (Miranda violation), 10 (ineffective assistance of counsel for failing to advise Truman properly regarding a continuance before the *nolle prosequi*), 11 (Eighth Amendment violation) and 13 (Universal Declaration of Human Rights claim) are defaulted because Truman failed to raise them in either his direct appeal or in his state habeas petition.   Truman does not appear to allege cause with regard to the default of these four claims, which clearly have no merit.

In Claim 3, Truman alleges that his <u>Miranda</u> rights were violated because he was held for "13 hours without being <u>Mirandized</u>."   [Dkt. No. 1 at 23].   Truman's allegation does not establish a <u>Miranda</u> violation because <u>Miranda</u> warnings are not required where an individual is simply in custody.   <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980).   Further, Truman has not identified any statement that he allegedly made to the police during the 13-hour period that was admitted against him at trial.   <u>See Stansbury v. California.</u>, 511 U.S. 318, 322 (1994) (statements made in violation of <u>Miranda</u> are generally not admissible at a criminal trial); <u>Cruz v. Miller</u>, 255 F.3d 77, 81 (2d Cir. 2001) (<u>Miranda</u> warnings are required only when there is both "custody" and "interrogation") (citations omitted).   Although Truman's counsel had moved to suppress certain statements Truman made because of the extreme emotional distress Truman was

---

[6]   Although it is not necessary to examine all of the factors, Truman's speedy trial claim alleges no prejudice.

under during that period due to having just witnessed his wife commit suicide by shooting

herself, the circuit court did not rule on Truman's motion because the prosecutor informed the

court that he did not intend to introduce any statement from that time period during his case-in-

chief. (9/11/15 Tr. at 2).[7]

Truman also asserts he was seized in violation of the Fourth Amendment and deprived of

medical care in violation of the Eight Amendment. [Dkt. No. 1 at 23]. The trial record shows

that the police had evidence, before Truman's wife's suicide, that he was involved in the

distribution of heroin and the search warrants executed on June 6, 2014, the day of her death,

resulted in the recovery of additional evidence consistent with drug distribution. See, supra at 2-

3. Any assertion that Truman was "unreasonably seized" is meritless because a prisoner "is

precluded from presenting a Fourth Amendment claim … in a habeas action, under the Supreme

Court's clear holding in Stone v. Powell, 428 U.S. 465 (1976)." McQueen v. Scroggy, 99 F.3d

1302, 1332 (6th Cir. 1996).

Truman also attempts to bootstrap an Eighth Amendment cruel and unusual punishment

claim into his unreasonable seizure claim by alleging he was not provided medical treatment

because he was in shock during the thirteen-hour period. There is no precedent "for allowing [a

habeas petitioner to] bootstrap [an unreasonable seizure claim] into the Eighth Amendment" to

---

[7]  Truman also testified at trial and having testified, any statements he made to the police were
admissible in rebuttal even if they were made in violation of Miranda. See Oregon v. Elstad,
470 U.S. 298, 307 (1985) ("Despite the fact that patently *voluntary* statements taken in violation
of Miranda must be excluded from the prosecution's case, the presumption of coercion does not
bar their use for impeachment purposes on cross-examination."). See also Arizona v.
Fulminante, 499 U.S. 279, 310 (1991) (holding that introduction of involuntary confession may
be reviewed for harmless error); United States v. Mobley, 40 F.3d 688, 694 (4th Cir. 1994)
(holding Miranda error harmless).

circumvent the holding in Stone v. Powell.   Moreover, as with his Fourth Amendment claim, Truman fails to allege prejudice from these alleged violations of his constitutional rights.

Claim 10 alleges Truman was denied effective assistance of counsel on January 23, 2015 when the trial court allowed his attorney, Myron Teluk, to withdraw and continued the matter to February 13, 2015 to set a trial date.   [Dkt. No. 1 at 31].   At the January 23, 2015 hearing, Teluk informed the circuit court judge that he had a conflict because his office had a sharing arrangement with an attorney who had represented a material witness.   (1/23/15 Tr. at 5).   The judge expressly advised Truman that if he appointed new counsel that it would "of necessity" require a continuance of his trial date.   Truman stated he understood, and that he was asking the court to continue his trial date "and set it for a date to have a new trial date set."   (Id. at 5, 7). In a subsequent hearing on April 29, 2015, Truman testified that Teluk had "to get out of [his] case" because he had a "conflict of interest."   (4/29/15 Tr. at 15).   Truman also admitted that he had moved to have Teluk dismissed from his case nine days before the January hearing because he did not believe Teluk was representing his best interests.   (Id. at 18-19).   At a May 28, 2015 hearing, Truman stated that he did not blame Teluk for withdrawing because Teluk had a "legitimate reason" for withdrawing.   (5/28/15 Tr. at 18).

The right to counsel of one's own choosing may be overcome by the trial court's independent interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."   Wheat v. United States, 486 U.S. 153, 160 (1988).   A trial court's disqualification of defense counsel due to a conflict of interest is reviewed under an "abuse of discretion" standard, United States v. Basham, 561 F.3d 302, 321 (4th Cir. 2009) (citing Wheat, 486 U.S. at 163), and "[t]he evaluation of the

facts and circumstances of each case under this standard must be left primarily to the informed

judgment of the trial court." Wheat, 486 U.S. at 164.

Contrary to Truman's assertion he was not denied counsel when Teluk was allowed to

withdraw — the circuit court appointed counsel for Truman and then continued the trial in order

to allow new counsel to prepare for it.  Shearer v. Commonwealth, 9 Va. App. 394, 402 (Va. Ct.

App. 1990) ("because the continuance was necessary to enable replacement counsel for the

defendant to prepare the defense, the continuance was attributable to the defense.").

Claim 11 asserts an Eighth Amendment violation based upon Truman's total sentence of

31 years in prison, which he alleges is twice the high-end of his sentencing guidelines.  [Dkt.

No. 1 at 21-32].  The claim has no merit.  The United States Supreme Court in Harmelin v.

Michigan, 501 U.S. 957, (1991), held that the Eighth Amendment "forbids only extreme

sentences that are grossly disproportionate to the crime."  Id. at 1001 (citing Solem v. Helm, 463

U.S. 277, 288 (1983)).  "Outside the context of capital punishment, successful challenges to the

proportionality of particular sentences have been exceedingly rare."  Rummel v. Estelle, 445

U.S. 263, 272 (1980).  "The law of this circuit is clear that, generally, a sentence imposed by a

state court which does not exceed the statutory maximum is not reviewable in a federal habeas

corpus proceeding."  Ledford v. Hinton, 563 F. Supp. 785, 786-87 (W.D.N.C. 1983) (citing

Stevens v. Warden, 382 F.2d 429, 433 (4th Cir. 1967)); Wright v. Maryland Penitentiary, State

of Maryland, 429 F.2d 1101, 1103 (4th Cir. 1970) (same); see White v. Keane, 969 F.2d 1381,

1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is

within the range prescribed by state law.").  Truman was convicted of ten felonies, six of which

were violations of Virginia Code § 18.2-248.  Each of those six violations carried a sentence of

5 to 40 years' incarceration.   On just these six convictions, Truman faced up to 240 years in prison if he had been sentenced consecutively to the maximum for each violation. The 31-year sentence for Truman's ten convictions was actually at the low end of each count.   As such, there is no Eighth Amendment violation.

Claim 13 relies on alleged violations of the Universal Declaration of Human Rights, which neither "impose[s] obligations as a matter of international law" nor "create[s] obligations enforceable in the federal courts." Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004); see also Nevius v. McDaniel, 218 F.3d 940, 946-47 (9th Cir. 2000) (denying certificate of appealability because the state court did not contradict or unreasonably apply federal law in denying petitioner's claim of a violation of "several instruments of international law, including the Universal Declaration of Human Rights, and the Convention against Torture and Other Cruel, Inhumane, or Degrading Treatment or Punishment); see also Lewis-Bey v. Wilson, No. 3:17cv763, 2019 U.S. Dist. LEXIS 172489, *13 (E.D. Va. Oct. 3, 2019) ("[T]here is no private right of action under declarations such as the United Nations Declaration on the Rights of Indigenous Peoples" and the Universal Declaration of Human Rights.") (citations omitted); Harris v. Welch, No. 3:14cv553-HEH, 2015 U.S. Dist. LEXIS 37299, *5 (E.D. Va. Mar. 24, 2015) (dismissing claim based upon Universal Declaration of Human Rights).   Accordingly, Claim 13 has no merit.

### 4. Miscarriage of Justice

Truman claims his convictions constitute a miscarriage of justice.   Such a claim requires establishing "a constitutional violation [that] has probably resulted in the conviction of one who is 'actually innocent' of the substantive offense." Richmond v. Polk, 375 F.3d 309, 323 (4th

Cir. 2004) (citation and internal quotation marks omitted). A convincing claim of actual

innocence "may allow a prisoner to pursue his constitutional claims ... on the merits

notwithstanding the existence of a procedural bar to relief." McQuiggin v. Perkins, 569 U.S.

383 (2013). This exception applies only in a "severely confined category" — that is, cases in

which reliable *new evidence* shows that "it is more likely than not that 'no reasonable juror'

would have convicted" the petitioner had the evidence been available at trial. Id. at 392

(quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

Because Truman has not presented any new evidence to establish a claim of actual

innocence, his arguments do not satisfy the rigorous requirements of McQuiggin, and do not

suffice to allow federal review of his procedurally defaulted claims. See Munchinski v. Wilson,

694 F.3d 308, 338 (3d Cir.2012) (impeachment evidence generally not sufficient to satisfy an

actual innocence claim based on newly discovered evidence) (citing Schlup, 513 U.S. at 324);

Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 588-89 (E.D. Va. 2006) (rejecting

fundamental miscarriage of justice argument when petitioner "introduce[d] nothing new, but

present[ed] instead a selective version of the facts and omit[ted] those facts belying his actual

innocence claim"); see also Sawyer v. Whitley, 505 U.S. 333, 349, (1992) ("[L]atter-day

evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear

and convincing showing that no reasonable juror would have believed the heart of the [witness's]

account.").[8]

---

[8] The state courts came to a similar conclusion on direct appeal when Truman asked the Court
of Appeals of Virginia not to enforce the defaults. The Court of Appeals of Virginia held that
even if the alleged false testimony was excluded, Truman could not establish a miscarriage of
justice occurred because the jury had ample other evidence upon which to convict. That
additional evidence included "[o]ther witnesses [that] testified that they [had] purchased drugs

### III.  Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition,

a federal court may not grant the petition based on the claim unless the state court's adjudication

is contrary to, or an unreasonable application of, clearly established federal law, or based on an

unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Whether a state court decision

is "contrary to" or "an unreasonable application of" federal law requires an independent review

of each of these requirements.  See Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state

court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite

to that reached by [the United States Supreme] Court on a question of law or if the state court

decides a case differently than [the United States Supreme] Court has on a set of materially

indistinguishable facts."  Id. at 413.  Under the "unreasonable application" clause, the writ

should be granted if the federal court finds that the state court "identifies the correct governing

legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to

the facts of the prisoner's case." Id.  The standard of reasonableness is an objective one.  Id. at

410.  Under this standard, a federal court focuses "on the state court decision that previously

addressed the claims rather than the petitioner's free-standing claims themselves."  McLee v.

Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997).

### IV.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's

performance was deficient" and (2) "the deficient performance prejudiced the defendant."

---

from [Truman], a firearm and ammunition were found in his home, and [his] own testimony
supported the child neglect charges."  [Dkt. No. 10-1 at 9]; Truman, 2018 Va. App. LEXIS 81,
*12-13.  In addition, ammunition was found in a compartment on Truman's motorcycle when it
was searched.

Strickland, 466 U.S. at 687.   To prove that counsel's performance was deficient, a petitioner

must show that "counsel's representation fell below an objective standard of reasonableness" id.

at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances,

"outside the range of professionally competent assistance."   Id. at 690.   Such a determination

"must be highly deferential," with a "strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance."   Id. at 689; see also Burket v. Angelone, 208

F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing

[counsel's] performance and must filter the distorting effects of hindsight from [its] analysis");

Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts

are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."   Strickland, 466 U.S. at 694. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."   Id.; accord, Lovitt v. True, 403 F.3d 171,

181 (4th Cir. 2005).   The burden is on the petitioner to establish not merely that counsel's errors

created the possibility of prejudice, but rather "that they worked to his *actual* and substantial

disadvantage, infecting his entire trial with errors of constitutional dimension."   Murray v.

Carrier, 477 U.S. 478, 494 (1986) (citations omitted).   The two prongs of the Strickland test are

"separate and distinct elements of an ineffective assistance claim," and a successful petition

"must show both deficient performance and prejudice."   Spencer, 18 F.3d at 233.   Therefore, a

court need not review the reasonableness of counsel's performance if a petitioner fails to show

prejudice.   Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir. 1998).

In addition, the Strickland standard has been described as "doubly deferential" because the deferential review under AEDPA overlaps with the deferential standard under Strickland. See Pinholster, 563 U.S. at 202.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.   The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly."   The Strickland standard is a general one, so the range of reasonable applications is substantial.   Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal citations omitted).

## V.  Analysis

In Claim 14 (A), Truman alleges he was denied effective assistance of counsel because his attorney filed bogus and unnecessary motions to assist the prosecutor in subverting his speedy trial rights.   In dismissing this claim, the Supreme Court of Virginia found that Truman had failed to establish prejudice under the second prong of Strickland because Truman had not alleged or explained how the delay in his trial impacted the outcome.

> Although petitioner summarily suggests he was tried in violation of his speedy trial rights, he fails to support that conclusion with any factual allegations. Further, petitioner does not state any basis on which to conclude that, had counsel not moved for a "psych evaluation" or filed any other purportedly "bogus" motion, the Commonwealth would not have tried petitioner in a timely fashion. Likewise, petitioner has not explained how the delay of his trial due to any motion counsel filed was detrimental to petitioner's interests, and he provides no factual support for his conclusory speculation that counsel filed any motion to assist the Commonwealth.   Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

[Dkt. No. 10-7 at 5].   Truman has not shown that the Supreme Court of Virginia's dismissal of

26

this claim involved an unreasonable determination of facts or an unreasonable application of federal law.

On June 19, 2015, the circuit court appointed Crossland to represent Truman in defending against the charges that had been terminated by *nolle prosequi* in April and re-indicted.   In the colloquy between Truman and the court Truman indicated he had a "conflict" with Crossland because Crossland had sought to have a mental evaluation of Truman.   (6/19/15 Tr. at 15-18). The colloquy went back and forth, and Truman ended it by saying that although he disagreed with having the evaluation he had " a forgiving nature," and that he "wanted to keep Mr. Crossland if it makes sense to the Court"   (Id. at 19).   The Court asked if Truman was withdrawing his reservations and he said "Yes, sir."   (Id. at 20).

On September 21, 2015, just before the start of his trial, Truman stated he was not satisfied with counsel.   (9/21/15 Tr. at 36).   Truman reiterated his dissatisfaction with the continuances stating by filing the motions his counsel was assisting the prosecutor.   (Id. at 37). The colloquy continued with the court asking Truman, even though he was dissatisfied with the continuances obtained by counsel, whether he wanted to go forward with the trial.   Truman stated he wanted "to go forward today, yes."   (Id. at 39).   The colloquy continued with Truman stating he wanted to go forward with Crossland, that he was entering his not guilty pleas voluntarily, and that he was ready for trial.   (Id. at 40).

Truman has not shown that the Supreme Court of Virginia's dismissal of this claim involved an unreasonable determination of facts or unreasonable application of federal law.

In Claim 14(B), Truman alleges counsel was ineffective for failing to subpoena witnesses.   Although Truman identifies two witnesses in his § 2254 petition, Terry Smith and

27

Jeff Robson [Dkt. No. 1 at 35], he failed to identify either witness in his state habeas petition or

proffer what the witnesses would have said.   [Dkt. 10-5 at 2, 5, 7].

In dismissing this claim in the state habeas petition, the Supreme Court of Virginia found

that Truman

> satisfie[d] neither the "performance" nor the "prejudice" prong of the two-part
> test enunciated in Strickland because petitioner does not allege or attempt to
> explain what additional investigation counsel should have undertaken or the
> witnesses or evidence counsel may have neglected.   Likewise, petitioner has not
> described any additional or different defenses counsel might have pursued.   See
> Teleguz [v. Warden], 279 Va. [1,] 6 [(2010)].   Petitioner's attempt to identify
> witnesses counsel neglected for the first time in his reply to the motion to dismiss
> does not correct the deficiency in his allegations.   See Code§ 8.01- 654(B)(2) (a
> petition for a writ of habeas corpus "shall contain all allegations the facts of which
> are known to petitioner at the time of filing"); Rule 5:7(e) (a petitioner may not
> raise new claims unless, prior to the expiration of the statute of limitations and the
> entry of a ruling on the petition, he obtains permission from the Court to do so).
> Further, petitioner does not allege or explain how counsel's presentation of
> additional witnesses or evidence might have impacted the jury's verdict.   Thus,
> petitioner has failed to demonstrate that counsel's performance was deficient or
> that there is a reasonable probability that, but for counsel's alleged errors, the
> result of the proceeding would have been different.

[Dkt. No. 10-7 at 6].   See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996)

("[A]n allegation of inadequate investigation does not warrant habeas relief absent a

proffer of what favorable evidence or testimony would have been produced.").

As the Fourth Circuit has previously held, under Virginia law, "unless a petitioner

seeks leave to amend his state habeas petition, the [state] court is without jurisdiction to

entertain any additional claims in a new state habeas petition." Hedrick v. True, 443

F.3d 342, 364 (4th Cir. 2006) (citing Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.

1994)).[9] Hedrick further held that since the petitioner had failed to seek leave to amend

---

[9]   The Supreme Court of Virginia did not prohibit Truman from developing the facts to support

his petition while it was before the Supreme Court of Virginia, the claim was not

exhausted, that raising a claim in a petition for rehearing did not fairly present the claim

to the state's highest court and, therefore, the claim was barred.   Id. at 364-65 n.1.

In sum, the Supreme Court of Virginia's dismissal of Truman's claim regarding the

failure to subpoena witnesses was not an unreasonable application of federal law or an

unreasonable determination of the facts based upon the record before it.

In Claim 14(C), Truman alleges his attorney was ineffective by failing

> to file motions to challenge the false evidence used against me (i.e., phone
> records, staged crime scene photos, witnesses, etc.), he refused to subpoena
> evidence or witnesses, get me clothes for trial, or help me in any kind of defense
> at all.  (See Exhibit U10 lines 9-16).   Nowhere in the record will you find
> appointed counsel explain any kind of prepared defense to contradict my
> statements.

[Dkt. No. 1 at 36].   In dismissing this claim, the Supreme Court of Virginia found no prejudice

under Strickland because

> the record, including the filings and transcripts from petitioner's criminal
> proceedings, demonstrates *counsel went to great measures to defend petitioner
> pre-trial, during trial, and post-trial, and petitioner fails to specify what further
> actions counsel should have taken on his behalf.*   Thus, petitioner has failed to
> demonstrate that there is a reasonable probability that, but for counsel's alleged
> errors, the result of the proceeding would have been different.

[Dkt. No. 10-7 at 4] (emphasis added).   Because Truman has not shown that the

---

his claim.   It is evident that Truman knew facts when he filed his petition but chose, for
whatever reason, not to include them in his state petition despite Code § 8.01-654(B)(2).
Indeed, Truman testified about Robson at trial.  (9/23/15 Tr. at 193).   Further, Truman not only
failed to allege the facts upon which he now relies in his § 2254 petition, he also failed to seek
leave to amend his state habeas petition even though his reply establishes that he knew the
additional facts that he had failed to include in the petition.   Indeed, Truman did not even seek
to amend after his failures were noted.   Cf. Winston v. Pearson, 683 F.3d 489, 497 (4th Cir.
2012) ("*new* evidence submitted in federal court that fundamentally alters a claim presented in
state court will render that claim unexhausted.") (emphasis added).

Supreme Court of Virginia's dismissal was an unreasonable application of federal law or

an unreasonable determination of the facts this claim will be dismissed.

In Claim 14(D), Truman alleged his attorney was ineffective for not assisting him in

obtaining civilian clothing for trial.   In his § 2254 petition, Truman admits that the trial court

offered him civilian clothes before trial, and that he refused.   [Dkt. No. 1 at 37].   Truman also

for the first time alleges that his family would have bought him a new suit, but that counsel did

not help him obtain clothes.   [Id.].   The Supreme Court of Virginia dismissed this claim finding

that Truman had not established Strickland prejudice and had not alleged or attempted to explain

> how counsel's purported refusal to obtain petitioner clothing for trial impacted the
> outcome of those proceedings.  See Teleguz, 279 Va. at 6; see also Steen v.
> Schmalenberger, 687 F.3d 1060, 1062- 64 (8th Cir. 2012) (a prisoner claiming
> ineffective assistance of counsel based on his proceeding to trial in prison garb
> must still allege and establish resulting prejudice under Strickland); Whitman v.
> Bartow, 434 F.3d 968, 972 (7th Cir. 2006) (same); Hill v. Mitchell, 400 F.3d 308,
> 320-21 (6th Cir. 2005) (same).   Petitioner's summary allegation of prejudice
> made for the first time in his reply to the motion to dismiss does not correct this
> deficiency.

[Dkt. No. 10-7 at 7].

Given that the record establishes that Truman had a viable alternative to appearing in

prison garb, was warned of the potential prejudice, and then refused the opportunity to appear in

non-jail attire, the Supreme Court of Virginia's dismissal of this claim was not an unreasonable

application of federal law or unreasonable determination of the facts.

In Claim 14(E), Truman alleges his counsel coerced him into consenting to joinder of the

charges.   The Supreme Court of Virginia dismissed the claim holding that the

> claim fails to satisfy the "prejudice" prong of the two-part test enunciated in
> Strickland because petitioner does not allege or attempt to explain how the joinder
> of his charges for one trial impacted the outcome of those proceedings or that he
> might have obtained a better result from having a separate trial on any of his

30

offenses.   See Teleguz, 279 Va. at 6.   Petitioner's summary allegation of
prejudice made for the first time in his reply to the motion to dismiss does not
correct this deficiency.   See Code§ 8.01-654(B)(2) (a petition for a writ of habeas
corpus "shall contain all allegations the facts of which are known to petitioner at
the time of filing"); Rule 5:7(e) (a petitioner may not raise new claims unless,
prior to the expiration of the statute of limitations and the entry of a ruling on the
petition, he obtains permission from the Court to do so).   Thus, petitioner has
failed to demonstrate that there is a reasonable probability that, but for counsel's
alleged errors, the result of the proceeding would have been different.

[Dkt. No. 10-7 at 7].   "[A] criminal defendant has no constitutional right to severance

unless there is a strong showing of prejudice caused by the joint trial," Cummings v.

Evans, 161 F.3d 610, 619 (10th Cir. 1998).   In Truman's case he requested that all of his

offenses be tried together.   The circuit court heard the motion to consolidate on

September 3, 2015 and during that hearing Truman asked that the charges, with the

exception of the two firearm possession charges, be tried together in a single trial.

(9/3/15 Tr. at 8-9).[10]   In following his client's wishes, counsel was not ineffective in this

regard and the Supreme Court of Virginia's dismissal of this claim was not an

unreasonable application of federal law or unreasonable determination of the facts and

must be dismissed.

     In Claim 14(F), Truman alleges that his attorney did not challenge what he deems

perjured testimony by prosecution witnesses.   Specifically, he complains that counsel did not

cross-examine these witnesses about their perjury involving plea deals and bond agreements.

Truman does not describe the content of the perjury about which he is concerned.   Moreover,

---

[10]   These two indictments were each terminated by the entry of a *nolle prosequi* on November 2,
2015.   See Virginia Judicial System, Case Status Information, Circuit Courts, Prince William
County page (http://www.courts.state.va.us/)   (Case Nos. CR14004433-00 and CR15001415-00)
(last viewed on January 4, 2021).

with respect to pleas and bonds, his attorney vigorously cross-examined the witnesses about

those matters.   (Tr. 9/22/15 at 113-18, Royston; Tr. 9/22/15 at 200-04, Jensen; Tr. 9/22/15 at

264, Zupan; Tr. 9/23/15 at 79-80, Brown).   In fact, counsel filed a motion to set aside the verdict

based on the alleged perjury of two of the witnesses, Jensen and Royston, and presented

evidence and testimony in the hearing on that motion.   (R. 563-96; Tr. 8/4/2016).   In dismissing

this claim, the Supreme Court of Virginia found that Truman had not shown any prejudice.

> [T]his claim fails to satisfy the "prejudice" prong of the two-part test enunciated
> in Strickland v. Washington, 466 U.S. 668, 687 (1984), because petitioner does
> not allege or attempt to explain how counsel's purported neglect or malfeasance
> impacted the outcome of petitioner's trial nor does petitioner allege any factual
> support for his speculation that counsel intended to assist the Commonwealth in
> convicting petitioner.   See Teleguz v. Warden, 279 Va. 1, 6 (2010) (claim of
> ineffective assistance of counsel failed, in part, because petitioner did not allege
> how counsel's purported neglect affected the outcome of his trial).
>
> Moreover, in addition to the facial insufficiency of petitioner's allegations, the
> record, including the filings and transcripts from petitioner's criminal
> proceedings, demonstrates counsel moved to set aside the verdict and for a new
> trial based on evidence that the Commonwealth may have unduly pressured or
> coerced Jenna Jensen and Kimberly Royston to testify against petitioner and that
> those witnesses may have testified falsely about such compulsion during
> petitioner's trial (Tr. 575).   The circuit court held a hearing on the motion, heard
> testimony, and ultimately denied the motion.   (Tr. 2161).   Although petitioner
> summarily contends counsel should have raised any issues with the witnesses'
> veracity before the jury returned its verdict, he has not explained how counsel's
> earlier action would have obtained a more favorable result (Page 7 of reply).
> Thus, petitioner has failed to demonstrate that there is a reasonable probability
> that, but for counsel's alleged errors, the result of the proceeding would have been
> different.

[Dkt. No. 10-7 at 3].   The Supreme Court of Virginia's dismissal of this claim was not an

unreasonable application of federal law or unreasonable determination of the facts.

In Claims 12 and 14(G), Truman attacks his trial and appellate attorneys for their

performance in presenting his appeal.   He alleges a conspiracy to "sabotage" his appeal and

32

claims the attorneys pretended to address certain issues but intentionally did so ineffectively.

Contrary to the record, he complains that they did not raise a claim under Napue v. Illinois, 360

U.S. 264 (1959)[11] and refused to follow his instruction to raise unspecified Fourth, Fifth, Sixth,

Eighth and Fourteenth Amendments claims.   The Supreme Court of Virginia found that Truman

had not established a claim under either prong of Strickland.

> [T]his claim satisfies neither the "performance" nor the "prejudice" prong of the
> two-part test enunciated in Strickland.   Generally, the selection of issues to raise
> on appeal is left to counsel's discretion, and petitioner has not attempted to
> explain how the issues he suggests counsel should have raised were appreciably
> stronger or more likely to succeed than the issues counsel choose to raise.   See
> Jones v. Barnes, 463 U.S. 745, 751-52 (1983) (the selection of issues to address
> on appeal is left to the discretion of appellate counsel, and counsel need not
> address every possible issue on appeal); United States v. Mason, 774 F.3d 824,
> 828-29 (4th Cir. 2014) ("Effective assistance of appellate counsel does not require
> the presentation of all issues on appeal that may have merit .... As a general
> matter, only when ignored issues are clearly stronger than those presented should
> we find ineffective assistance for failure to pursue claims on appeal.") (internal
> quotation marks and citations omitted).   Likewise, petitioner has not attempted to
> allege or explain how counsel's raising different issues on appeal would have
> resulted in the reversal of any of his convictions or another successful outcome on
> appeal.   Thus, petitioner has failed to demonstrate that counsel's performance
> was deficient or that there is a reasonable probability that, but for counsel's
> alleged errors, the result of the proceeding would have been different.

[Dkt. No. 10- at 8-9].   Counsel was not ineffective in this regard and the Supreme Court

of Virginia's dismissal of this claim was not an unreasonable application of federal law or

unreasonable determination of the facts.

---

[11]   Counsel did raise a Napue claim on appeal, but the Court of Appeals found the claim was
defaulted at trial.   See Truman, 2018 Va. App. LEXIS 81 *10 ("At no point, however, did
appellant contend that the trial court should order a new trial because of the Commonwealth's
failure to correct the witness's allegedly false testimony.").

Petitioner requests the Court appoint counsel to assist him in these proceedings alleging the proceedings are "complex." [Dkt. No. 1 at 44]. There is no right to counsel when seeking habeas corpus relief in the federal courts. See McCleskey v. Zant, 499 U.S. 467, 495 (1991); Penn v. Finley, 481 U.S. 551, 555 (1987). Although the Court has discretion to appoint counsel if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), counsel should only be appointed under "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Petitioner has presented no exceptional circumstances. Further, appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing. See Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c). The claims before the Court do not require discovery because they involve historical matters fully contained within the record and do not require a hearing. Cf. Bennett v. Angelone, 92 F.3d 1336, 1347 (4th Cir. 1996) (denying petitioner's request for an evidentiary hearing because he "add[ed] nothing 'additional" to the factual mix already before the district court"). For these reasons, Truman's motion for appointment of counsel will be denied.

Truman also seeks discovery to prove his claim of actual innocence. [Dkt. No. 1 at 44]. "Unlike other civil litigants, a § 2254 habeas petitioner 'is not entitled to discovery as a matter of ordinary course.' Bracy v. Gramley, 520 U.S. 899, 904 (1997). Instead, he must 'show good cause before he is afforded an opportunity for discovery.' Quesinberry v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998)." Stephens v. Branker, 570 F.3d 198, 213 (4th Cir. 2009). His discover request concerns the June 3, 2014 sale of

heroin by him to Jensen, but he has "offer[ed] no more than speculation that additional information may exist and [has not] show[n] good cause for discovery to develop this claim."[12]

Truman does not demonstrate how the alleged discovery would entitle him to relief and has made "no showing that the information sought is material to the merits" of his claims, much less his claim of actual innocence that the Court has found to be without merit.  Id.; see also Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004) (holding Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations"); see, supra at 22-23.  Further, because Truman procedurally defaulted his claims "and has not shown cause and prejudice or fundamental miscarriage of justice permitting its consideration on federal habeas" there is no abuse of discretion in denying his discovery request.  Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999); see also Rucker v. Norris, 563 F.3d 766, 771 (8th Cir. 2009) (no abuse of discretion in denying discovery on procedurally barred claims that were never raised in state court).[13]

---

[12]   In pretrial discovery, the prosecution provided evidence related to the June 3, 2014 sale in addition to providing defense counsel the recordings Truman made to law enforcement officers; physical evidence including the certificates of analysis for DNA tests, drug analysis, and fingerprints; Truman's criminal history; the police reports from June 3, 2014; lists of the evidence obtained during the investigation; two discs containing all the photographs taken during the investigation; an oral summary of the evidence it expected to present at trial; and evidence relating to the credibility of cooperating witnesses, including their relevant criminal records and offers of leniency.  Trial R. at 382-83.

[13]   Truman also moves the Court to issue the writ because the respondent's motion to dismiss was filed on Tuesday, September 8, 2020 (the day after a legal holiday), which was more than thirty days after the order for a response was issued on August 6, 2020.  [Dkt. No. 15 at 1].  In this case, the thirty days expired on a weekend and if a pleading is due on a weekend or legal holiday, it is deemed due on the day following the weekend or a legal holiday, which was September 8, 2020.  See Fed. R. Civ. P. 6 (a)(1)(A) and (a)(1)(C) (in computing time courts

## VI.   Conclusion

For the foregoing reasons, respondent's Motion to Dismiss will be granted, all of Truman's motions will be denied, and this petition will be dismissed with prejudice.   An appropriate Order and judgment shall issue.

Entered this ___14th___ day of January, 2021.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

"exclude the day of the event that triggers the period" and "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."   Because the motion to dismiss was timely filed, there is no basis on which to grant the writ.

36